*13-206-cv*
*U.S. D.I.D. Corp. v. Windstream Communications, Inc.*

# In the
# United States Court of Appeals
## For the Second Circuit

————————————

August Term, 2013
No. 13-206-cv

U.S. D.I.D. CORP.,
*Plaintiff-Appellant,*

*v.*

WINDSTREAM COMMUNICATIONS, INC.,
*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of New York.
No. 12-cv-4023 — Jesse M. Furman, *Judge.*

————————————

ARGUED: MARCH 31, 2014
DECIDED: DECEMBER 22, 2014

————————————

Before: KATZMANN, *Chief Judge*, WALKER and DRONEY, *Circuit Judges.*

————————————

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1      Appeal from an order of the United States District Court for
2  the Southern District of New York (Furman, *Judge*) awarding the
3  defendant damages from security posted by the plaintiff upon the
4  grant of a temporary restraining order under Rule 65(c) of the
5  Federal Rules of Civil Procedure. We hold that the district court
6  retained jurisdiction to award such damages from the security after
7  the plaintiff's notice of voluntary dismissal under Rule 41(a)(1)(A)(i)
8  of the Federal Rules of Civil Procedure. Because we conclude that
9  the district court must determine that the defendant was wrongfully
10  restrained before awarding recovery on the security, however, we
11  remand. Finally, we find that, where the district court determines
12  that the defendant was wrongfully restrained by being required to
13  provide services to the plaintiff, it may order recovery from the
14  security in an amount equal to the market value of the services
15  provided.
16      Accordingly, we **VACATE** and **REMAND**.

————————————

19      JOSEPH K. SCULLY, Day Pitney LLP, Hartford,
20      Connecticut (Nancy Kourland, Rosen &
21      Associates, P.C., New York, New York, *on the*
22      *brief*), *for Plaintiff-Appellant.*

23      BRIAN J. BUTLER, Bond, Schoeneck & King, PLLC,
24      Syracuse, New York, *for Defendant-Appellee.*

————————————

26  DRONEY, *Circuit Judge*:

27      This appeal presents the question of whether a defendant may

28  recover costs and damages from security posted by a plaintiff in

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    obtaining a temporary restraining order ("TRO"), even though the

2    plaintiff later filed a notice of voluntary dismissal without prejudice,

3    preventing a final adjudication on the merits. The U.S. District Court

4    for the Southern District of New York (Furman, *Judge*) granted

5    Plaintiff-Appellant U.S. D.I.D. Corp. ("D.I.D.") a TRO against

6    Defendant-Appellee     Windstream     Communications,     Inc.

7    ("Windstream"). In doing so, the district court required D.I.D. to

8    post security with the court clerk under Rule 65(c) of the Federal

9    Rules of Civil Procedure (the "TRO security" or "Rule 65(c)

10   security").[1] The district court later denied D.I.D.'s motion for a

11   preliminary injunction and dissolved the TRO, concluding that

12   D.I.D. failed to show a likelihood of success on the merits of the

13   underlying suit. Soon afterward, D.I.D. filed a notice of voluntary

---

[1] Rule 65(c) employs the term "security," which includes bonds. Typically, bonds securing a TRO are posted by a surety, while "security" includes amounts deposited directly by the plaintiff into the court, as occurred here. As discussed below in the text, Rule 65.1 of the Federal Rules of Civil Procedure provides for an expedited procedure against sureties for such bonds.

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    dismissal without prejudice under Rule 41(a)(1)(A)(i) of the Federal

2    Rules of Civil Procedure. Windstream then moved for an award of

3    costs and damages from the TRO security. The district court found

4    that awarding recovery from such security requires a final

5    adjudication on the merits. It went on to conclude, however, that

6    D.I.D.'s voluntary dismissal without prejudice functioned as a final

7    adjudication on the merits and allowed recovery on the TRO

8    security.

9        We agree that a district court may grant recovery from a TRO

10    security after the plaintiff files a notice of voluntary dismissal. We

11    hold that recovery from a TRO security requires only a

12    determination that the defendant was wrongfully restrained, and

13    not necessarily a final adjudication on the merits. Because the district

14    court never made this specific determination, we VACATE the

15    judgment of the district court and REMAND for the district court to

16    determine whether, and for what time period, Windstream was

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    wrongfully restrained by the TRO, and to calculate the damages

2    accordingly.

3                                **BACKGROUND**

4          D.I.D. was, during the relevant time, a small, privately held

5    business engaged in the resale of telecommunications services to

6    "calling card" providers, "call centers," and similar businesses.

7    D.I.D. in turn purchased telecommunications services from PAETEC

8    Communications, Inc. ("PAETEC") under a long distance service

9    calling agreement (the "Service Agreement" or the "Agreement")

10   entered into on May 5, 2011. The Agreement contained a

11   "limitations of service" clause, which stated that D.I.D. "may not

12   purchase services under this retail service agreement and resell

13   services to end users." J.A. 81. The Agreement also contained a

14   termination provision, stating that "[a] party may terminate the

15   Agreement on thirty (30) days' written notice if the other party

16   materially breaches the Agreement . . . ." J.A. 80.

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1      Windstream acquired PAETEC in late 2011. On March 27,

2    2012, Windstream informed D.I.D. that it had determined that D.I.D.

3    was engaged in resale of Windstream's services, in violation of the

4    Agreement's "limitations of service" clause. Windstream indicated

5    that it would raise D.I.D.'s rates to what the parties later referred to

6    as "interim" rates—between its lower "retail" rates and its higher

7    "wholesale" rates—until June 1, 2012. Windstream stated that it

8    would further increase D.I.D.'s rates to its "standard wholesale

9    rates" after June 1. In response to Windstream's rate change

10   notification, D.I.D. did not deny that it was engaged in the resale of

11   Windstream's telecommunications services. Instead, D.I.D. alleged

12   that Windstream's attempt to raise its rates constituted an

13   impermissible restriction on the resale of telecommunications

14   services in violation of federal law.

15      On May 3, 2012, Windstream sent D.I.D. a termination notice.

16   Windstream asserted that its differential pricing structure for retail

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1   customers and wholesalers was lawful, and that D.I.D. "specifically

2   agreed to that distinction when [it] signed [its] retail contract." J.A.

3   116. Windstream indicated that it interpreted D.I.D.'s most recent

4   response "as an improper refusal to pay the increased rates" and

5   that it would terminate D.I.D.'s services five days later, on May 8,

6   2012. *Id.* Windstream later agreed not to disconnect D.I.D.'s service

7   before May 21, 2012.

8        On May 21, 2012, D.I.D. filed a complaint and a motion for a

9   TRO against Windstream in the U.S. District Court for the Southern

10  District of New York. The district court granted the TRO that day,

11  enjoining Windstream from terminating service to D.I.D. In issuing

12  the order, the district court required that D.I.D. deposit $314,672.80,

13  an amount equal to twice the charges on Windstream's most recent

14  monthly invoice, as security into the registry of the district court.

15       The district court held a hearing on May 23, 2012, which it

16  continued until June 4, 2012. At the June 4 hearing, the district court

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1  determined that it would "allow Windstream to increase the rates to

2  the wholesale rates effective June 1[]" until the hearing on D.I.D.'s

3  motion for a preliminary injunction, scheduled for June 21, 2012.

4  J.A. 629. Throughout the course of these hearings, the TRO remained

5  in effect, and Windstream continued to provide telecommunications

6  services to D.I.D.[2]

7       At the June 21, 2012 hearing, the district court denied D.I.D.'s

8  motion for a preliminary injunction and dissolved the TRO. The

9  district court concluded that although D.I.D. had established

10 irreparable harm at the time the TRO was first issued, any risk of

11 such harm that remained on June 21 resulted from D.I.D.'s failure to

12 use the time when the TRO was in effect to obtain a new service

13 provider. The district court further concluded that D.I.D. had failed

---

[2]  A TRO cannot exceed fourteen days unless the district court, "for good cause," extends it for another period of no more than fourteen days; a TRO lasting longer than twenty-eight days requires that the adverse party consent, as apparently occurred here. Fed. R. Civ. P. 65(b)(2).

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    to establish a likelihood of success on the merits of the underlying

2    contractual dispute. The district court determined that D.I.D. was

3    engaged in the resale of telecommunications services, and that this

4    resale constituted a material breach of the Service Agreement.

5    Finally, in response to D.I.D.'s contention that Windstream's May 3

6    notice of termination was ineffective because it provided that

7    services would be terminated on May 8, before the end of the

8    Agreement's thirty-day termination notice requirement, the district

9    court concluded that this issue was moot. The district court reasoned

10   that under New York law a termination notice that incorrectly

11   identifies the termination date nevertheless becomes effective as of

12   the correct termination date.

13       After issuing this ruling, the district court asked counsel for

14   Windstream whether it objected to the return of the TRO security to

15   D.I.D. Windstream's counsel responded: "No objection, your Honor,

16   considering you are dissolving the TRO." J.A. 653. The district court

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1   also noted that Windstream had not filed an answer to D.I.D.'s

2   complaint, even though Windstream's answer was due that day.

3   Windstream's counsel requested an extension, and the district court

4   granted an extension until 5 p.m. the following day, June 22, 2012.

5      Early in the day on June 22, before Windstream filed its

6   answer, D.I.D. filed a notice of dismissal without prejudice under

7   Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Three

8   days later, Windstream sent a letter to the district court requesting

9   recovery from the TRO security. In the letter Windstream's counsel

10   acknowledged that he had not objected to the return of the TRO

11   security at the June 21 hearing. He explained, however, that at the

12   time of the hearing he was not aware that Windstream had just

13   issued an invoice in the amount of $244,888.79 for services rendered

14   between May 15, 2012 and June 14, 2012. Windstream requested that

15   the district court direct the payment of that amount from the TRO

16   security.

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1    On January 7, 2013 the district court issued an opinion and

2    order concluding that D.I.D.'s voluntary dismissal established that

3    Windstream was entitled to recover from the TRO security. *See U.S.*

4    *D.I.D. Corp. v. Windstream Commc'ns, Inc.* (*U.S. D.I.D. II*), 916 F. Supp.

5    2d 501 (S.D.N.Y. 2013).[3] The district court found that recovery on

6    Rule 65(c) security—"a[t] least in this Circuit"—required a final

7    adjudication on the merits. *Id.* at 506-07. The district court

8    nevertheless concluded that a voluntary dismissal without prejudice

9    may function as a final adjudication on the merits for the purpose of

10   recovery on Rule 65(c) security. *Id.* at 508-11. Because D.I.D.'s

11   decision to enter a voluntary dismissal without prejudice

12   immediately followed the court's denial of D.I.D.'s motion for a

---

[3] The district court's opinion and order vacated its earlier July 13, 2012 opinion and order granting in part Windstream's request for recovery from the TRO security. *See U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.* (*U.S. D.I.D. I*), No. 12 Civ. 4023, 2012 WL 2878136 (S.D.N.Y. July 13, 2012). The district court's July 2012 opinion and order had held that a final adjudication on the merits was not necessary for recovery on the TRO security, *id.* at *3, and that its denial of D.I.D.'s motion for a preliminary injunction determined the wrongfulness of the TRO, *id.* at *4.

-11-

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    preliminary injunction and the dissolution of the TRO, and because

2    there was no reason to explain D.I.D.'s voluntary dismissal other

3    than the court's determination that D.I.D. was unlikely to prevail on

4    the merits, the district court concluded that the dismissal qualified

5    as a final adjudication on the merits. *Id.* at 514-15. Finally, the district

6    court calculated the damages recoverable against the TRO security

7    at $227,271.92, a figure that it reached based on the "interim" rates

8    that Windstream charged for the period from May 22, 2012 (when

9    the TRO was first entered) to May 31, 2012, and the wholesale rates

10    for the period from June 1, 2012 to June 21, 2012 (when the TRO was

11    dissolved). *Id.* at 515-16. This appeal followed.

12                            **DISCUSSION**

13        D.I.D. raises four issues on appeal. First, D.I.D. argues that the

14    district court lacked jurisdiction to order recovery from the TRO

15    security because the district court's order followed D.I.D.'s

16    voluntary dismissal without prejudice. Second, D.I.D. contends that

17    Windstream is equitably estopped from asserting and has waived its

1   claim to recovery from the TRO security. Third, D.I.D. argues that

2   the district court erred in concluding that D.I.D.'s voluntary

3   dismissal established that Windstream had been wrongfully

4   restrained by the TRO. Finally, D.I.D. asserts that, even if

5   Windstream were entitled to recovery from the TRO security, the

6   district court erred in calculating the amount based on the rates

7   charged by Windstream, rather than the cost to Windstream of

8   providing the telecommunications services. We address each

9   argument in turn.

10  **I.      Jurisdiction to Order Recovery on the TRO Security**

11        D.I.D. argues that the voluntary dismissal of its complaint

12  deprived the district court of subject matter jurisdiction to award

13  recovery from the TRO security. We review jurisdictional questions

14  *de novo. United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc.*

15  *v. Westchester Cnty.*, 712 F.3d 761, 767 (2d Cir. 2013).

1    Rule 41(a)(1) of the Federal Rules of Civil Procedure allows a

2    plaintiff "one free dismissal." *Cooter & Gell v. Hartmarx Corp.*, 496

3    U.S. 384, 397-98 (1990). The Rule "permits a plaintiff to dismiss an

4    action without prejudice" so long as the plaintiff "files a notice of

5    dismissal before the defendant files an answer or motion for

6    summary judgment and . . . the plaintiff has never previously

7    dismissed an action based on or including the same claim." *Id.* at 394

8    (internal quotation marks omitted). A voluntary dismissal without

9    prejudice "vitiate[s] and annul[s] all prior proceedings and orders in

10   the case, and terminat[es] jurisdiction over it for the reason that the

11   case has become moot." *Oneida Indian Nation of N.Y. State v. Oneida*

12   *Cnty.*, 622 F.2d 624, 629 n.7 (2d Cir. 1980) (citation and internal

13   quotation marks omitted).

14   "It is well established," however, "that a federal court may

15   consider collateral issues after an action is no longer pending."

16   *Cooter & Gell*, 496 U.S. at 395. A district court may, for instance, grant

-14-

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1 an award of costs or attorney's fees or initiate contempt proceedings

2 after a voluntary dismissal without prejudice. *Id.* at 395-96. When a

3 district court addresses such collateral issues "after a voluntary

4 dismissal[, it] does not deprive the plaintiff of his right under Rule

5 41(a)(1) to dismiss an action without prejudice" because the issues'

6 resolution "does not signify a district court's assessment of the legal

7 merits of the complaint." *Id.* at 396. This is true "[e]ven if a district

8 court indicated that a complaint was not legally tenable or factually

9 well founded for Rule 11 purposes," because "the resulting Rule 11

10 sanction would nevertheless not preclude the refiling of a

11 complaint." *Id.*

12     Like the Rule 11 sanctions at issue in *Cooter & Gell*, a district

13 court's awarding recovery from a Rule 65(c) security following the

14 voluntary dismissal of a complaint "is not a judgment on the merits

15 of an action." 496 U.S. at 396. True, a district court may express its

16 views on the merits of the underlying claims in determining

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1    whether a party was wrongfully restrained, just as it may express its

2    views on the merits of the underlying claims in determining

3    whether a complaint is frivolous and warrants sanctions. But that

4    does not preclude the district court from considering collateral

5    issues such as sanctions or recovery from a Rule 65(c) security.

6      Our conclusion is consistent with the policies underlying both

7    Rule 41(a)(1) and Rule 65(c) of the Federal Rules of Civil Procedure.

8    In *Cooter & Gell*, the Supreme Court observed that Rule 41(a)(1) was

9    "designed to curb abuses of . . . nonsuit rules" by limiting the right

10    to voluntary dismissal without prejudice to "the brief period before

11    the defendant had made a significant commitment of time and

12    money." *Id.* at 397. Similarly, Rule 11 operates to deter "[t]he filing of

13    complaints, papers, or other motions without taking the necessary

14    care in their preparation," which constitutes "a separate abuse of the

15    judicial system, subject to separate sanction." *Id.* at 398.

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    Just as "the harm triggering Rule 11's concerns has already

2    occurred" upon the mere filing of baseless papers "[e]ven if the

3    careless litigant quickly dismisses the action," *id.*, a defendant may

4    have already suffered harm while the TRO was in effect even if the

5    TRO is subsequently dissolved. The Rule 65(c) security requirement

6    is designed to "assure[] the [restrained] party that it may readily

7    collect damages from the funds posted in the event that it was

8    wrongfully [restrained], and that it may do so without further

9    litigation and without regard to the possible insolvency of the

10   plaintiff." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir.

11   2011). To achieve these purposes, a district court must retain

12   jurisdiction to award costs and damages from Rule 65(c) security

13   despite the plaintiff's entry of a voluntary dismissal under Rule

14   41(a)(1). Like the imposition of Rule 11 sanctions, moreover, an

15   award of costs and damages from Rule 65(c) security "is useful to

16   deter . . . misconduct." *Cooter & Gell*, 496 U.S. at 398. Discouraging

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    abuse of TROs is particularly important given the "drastic" character

2    of the remedy, *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l*

3    *Ass'n*, 306 F.2d 840, 843 (2d Cir. 1962), which may be issued in an *ex*

4    *parte* proceeding in which the restrained party lacks the opportunity

5    to be heard, *see In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979)

6    (per curiam).

7        Determining whether a defendant is entitled to recover from a

8    Rule 65(c) security following a plaintiff's voluntary dismissal is also

9    consistent with the "expeditious, summary procedure" provided for

10    by Federal Rule of Civil Procedure 65.1. 11A Wright & Miller § 2972.

11    Rule 65.1 permits a wrongfully enjoined or restrained party, by

12    motion and without filing an independent action, to collect against a

13    non-party surety on a TRO or injunction bond. Where a plaintiff has

14    voluntarily dismissed its suit before a final adjudication on the

15    merits, the defendant's recovery on the Rule 65(c) security would

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1 similarly be sought by motion and adjudicated in a summary

2 proceeding.

3      Accordingly, the issue of whether the defendant may recover

4 against a Rule 65(c) security is collateral to the merits of the

5 plaintiff's underlying claims. Because it is collateral, the district

6 court retains jurisdiction to award recovery against the Rule 65(c)

7 security after the plaintiff has filed a notice of voluntary dismissal.

8 **II.      Equitable Estoppel and Waiver**

9      D.I.D. also asserts that Windstream is either equitably

10 estopped from asserting or has waived its claim for damages from

11 the TRO security because Windstream's attorney stated at the June

12 21 hearing that he had "[n]o objection" to the release of the TRO

13 security. J.A. 653. Where the facts are undisputed, a determination

14 regarding waiver and estoppel is a question of law, reviewed *de*

15 *novo. See Jarvis v. Ford Motor Co.*, 283 F.3d 33, 59 (2d Cir. 2002)

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1  (considering waiver); *Chartier v. Marline Mgmt., LLC*, 202 F.3d 89, 93

2  (2d Cir. 2000) (considering estoppel).

3      The district court rejected D.I.D.'s equitable estoppel and

4  waiver arguments, the former because it found that D.I.D. could not

5  establish detrimental reliance. *U.S. D.I.D. I*, 2012 WL 2878136, at *3.

6  We agree with the district court that D.I.D. failed to establish the

7  detrimental reliance required for equitable estoppel. As for waiver,

8  we conclude that Windstream's attorney's statement did not evince

9  a clear and unequivocal intent to forgo recovery against the TRO

10  security.

11      *A. Equitable Estoppel*

12      Equitable estoppel precludes a person from regaining

13  property or its value where that person "makes a definite

14  misrepresentation of fact to another person having reason to believe

15  that the other will rely upon it" and "the other in reliance upon the

16  misrepresentation . . . so change[s] his position that it would be

1   unjust to deprive him of that which he thus acquired." *Heckler v.*

2   *Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984)

3   (quoting Restatement (Second) of Torts § 894(1) (1979)). "[A]

4   hallmark of the doctrine is its flexible application . . . ." *Id.* "An

5   essential element of equitable estoppel," however, "is detrimental

6   reliance on the adverse party's misrepresentations." *Republic of*

7   *Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (internal

8   quotation marks, citations and alteration omitted).

9        We conclude later in this opinion that a recovery on Rule 65(c)

10  security turns on a determination that the defendant was wrongfully

11  restrained. Because Windstream's ability to recover on the TRO

12  security did not depend on D.I.D.'s voluntary dismissal, and

13  because D.I.D. does not identify any other actions that it took in

14  reliance on Windstream's counsel's representations during the brief,

15  four-day period between the June 21 hearing and Windstream's

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1 request for costs and damages from the TRO security, we find that

2 D.I.D. failed to establish detrimental reliance.

3     *B. Waiver*

4     Waiver is the "intentional relinquishment of a known right."

5 *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999). Although

6 we have recognized that waiver "may be inferred from the conduct

7 of the parties," we have emphasized that "[t]he conduct said to

8 constitute a waiver must be clear and unequivocal, as waivers are

9 never to be lightly inferred." *Mooney v. City of N.Y.*, 219 F.3d 123, 131

10 (2d Cir. 2000) (internal quotation marks omitted). "We will infer a

11 waiver only where the parties were aware of their rights and made

12 the conscious choice, for whatever reason, to waive them." *Id.*

13 (internal quotation marks omitted). "Mere negligence, oversight, or

14 thoughtlessness does not create a waiver." 28 Am. Jur. 2d *Estoppel*

15 *and Waiver* § 192 (2011).

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    We have little difficulty rejecting D.I.D.'s waiver argument.

2    Although Windstream did indicate that it had "[n]o objection" to the

3    release of the TRO security during the June 21 hearing, this brief

4    colloquy included no mention of Windstream's right to recover

5    damages from the TRO security before it was released. The remarks

6    of Windstream's counsel, then, evince no conscious or unequivocal

7    choice to forgo recovery from the TRO security. On the contrary,

8    there is no reason to doubt counsel's representation that his remarks

9    reflected his unawareness that Windstream had issued an invoice

10   for services rendered during the time the TRO was in effect, and that

11   this invoice had not been paid. Waiver "is an equitable doctrine

12   based upon fairness and justice," which we use "to avoid a result

13   where parties have conducted themselves in such a way as to make

14   that result unfair." 31 C.J.S. *Estoppel and Waiver* § 86. That standard

15   was not met here.

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

III.  **Determining Recovery on Rule 65(c) Security Following a Voluntary Dismissal Without Prejudice**

Rule 65(c) of the Federal Rules of Civil Procedure allows for recovery on posted security where the party has "been wrongfully enjoined or restrained." Citing our decision in *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir. 1990), D.I.D. argues, and the district court held, that determining whether a defendant was "wrongfully restrained" requires a final adjudication on the merits. D.I.D. additionally argues that the district court erred to the extent it concluded that D.I.D.'s voluntary dismissal constituted the requisite final determination on the merits. We review "a district court's decision to grant or deny recovery against an injunction bond . . . for abuse of discretion," recognizing that "the court's discretion should be exercised in a manner consistent" with the presumption that "wrongfully enjoined parties are entitled to . . . recovery against the bond for provable damages." *Nokia Corp.*, 645 F.3d at 557. The "abuse of discretion" standard entails *de novo* review

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1    for legal issues and clear error review for factual findings. *United*

2    *States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008).

3    A. *Whether Determining Wrongful Restraint Requires a Final*
4        *Adjudication on the Merits*

5        The Supreme Court has held that whether a party has "been

6    wrongfully enjoined or restrained" is not always coextensive with a

7    final adjudication on the merits. *See Grupo Mexicano de Desarrollo,*

8    *S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 314, 317 (1999). In *Grupo*

9    *Mexicano*, the plaintiffs, various investment funds, had purchased

10   unsecured notes of the defendant, Grupo Mexicano de Desarrollo,

11   S.A. ("GMD"), a Mexican company involved in the construction of a

12   toll road sponsored by the Mexican government. *Id*. at 310. Due to a

13   downturn in the Mexican economy, the Mexican government

14   assisted various entities involved in the construction of the toll road,

15   including GMD, by issuing guaranteed notes to them. *Id*. at 311. The

16   problems in the Mexican economy persisted, GMD started to

17   negotiate a restructuring of its debt, and reports began to circulate

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    suggesting that GMD was dissipating its most valuable assets—the

2    guaranteed notes issued by the Mexican government—to the

3    detriment of its creditors, including the investment funds. *Id*. at 311-

4    12.

5         The investment funds brought suit in the U.S. District Court

6    for the Southern District of New York to recover on their unsecured

7    notes following GMD's default. *Id*. at 312. The district court granted

8    a TRO and then a preliminary injunction prohibiting GMD from

9    transferring the government-guaranteed notes. *Id*. at 312-13. While

10   the interlocutory appeal of the preliminary injunction was pending,

11   the district court granted summary judgment in favor of the

12   investment funds and converted the preliminary injunction into a

13   permanent injunction. *Id*. at 313. GMD ultimately chose not to

14   appeal the grant of summary judgment or the permanent injunction,

15   but continued with its appeal of the preliminary injunction. *Id*. at

16   313-14.

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1     The Supreme Court agreed that the preliminary injunction

2  should not have been issued, even though the plaintiffs prevailed on

3  the merits. The Court explained that, in the usual case, the final

4  injunction establishes the substantive validity of the preliminary

5  injunction because "[t]he final injunction establishes that the

6  defendant *should not have been engaging in the conduct that was*

7  *enjoined*." *Id*. at 315 (emphasis in original). At times, however, "the

8  substantive validity of the final injunction does *not* establish the

9  substantive validity of the preliminary one," so the defendants may

10  establish that "they *have* been harmed by the issuance of the

11  unauthorized preliminary injunction—and hence *should* be able to

12  recover on the bond—*even if* the final injunction is proper." *Id*.

13  (emphasis in original). The Court concluded that *Grupo Mexicano*

14  presented the latter type of case because the district court had

15  enjoined the defendant's transfer of assets in contravention of "the

16  historical principle that before judgment (or its equivalent) an

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    unsecured creditor [here, the investment funds] has no rights at law

2    or in equity in the property of his debtor." *Id*. at 330.

3        Just as an injunction may have been improperly issued even

4    though the plaintiff ultimately prevails on the merits, a defendant

5    may have been properly enjoined even though the plaintiff

6    ultimately loses on the merits. Several circuits have held, for

7    instance, that, where a plaintiff acquires temporary relief to enforce

8    an arbitration-grievance procedure required under a collective

9    bargaining agreement, the defendant may not necessarily recover

10   from the Rule 65(c) security even though it ultimately prevails in the

11   arbitration process. *See Newspaper & Periodical Drivers' & Helpers'*

12   *Union, Local 921 v. S.F. Newspaper Agency*, 89 F.3d 629, 634 (9th Cir.

13   1996); *Miscellaneous Drivers, Helpers, Heath Care & Pub. Emps. Union*

14   *Local 610 v. Kroger Co.*, 858 F.2d 415, 416 (8th Cir. 1988); *Lever Bros.*

15   *Co. v. Int'l Chem. Workers Union, Local 217*, 554 F.2d 115, 120-21 (4th

16   Cir. 1976). These decisions reason that a grievance-arbitration

1    procedure in a collective bargaining agreement establishes a

2    procedural right distinct from the underlying merits of any given

3    labor dispute. Thus, temporary relief enforcing this procedural right

4    may be properly issued even if the defendant ultimately prevails on

5    the merits in arbitration. *See Newspaper & Periodical Drivers' &*

6    *Helpers' Union*, 89 F.3d at 634.

7        Although resolving the propriety of temporary relief can be

8    distinct from the final adjudication on the merits, as in *Grupo*

9    *Mexicano*, in the usual case the wrongfulness inquiry "*generally . . .*

10    must be resolved by a trial on the merits." *Univ. of Tex. v. Camenisch*,

11    451 U.S. 390, 396 (1981) (emphasis added); *see also Guzman v. Local*

12    *32B-32J, Serv. Emps. Int'l Union*, 72 F.3d 260, 263 (2d Cir. 1995)

13    (finding that the claim "should be resolved only after the District

14    Court has conducted a full evidentiary hearing" where the

15    defendant's claim to recovery from the injunction bond turned on

16    whether the defendant was entitled to refrain from the conduct

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1  compelled by injunction). That is because it is the final adjudication

2  on the merits, after the full presentation of the parties' cases, that

3  ordinarily establishes whether the defendant should not have been

4  engaging in the conduct that was enjoined. *See Grupo Mexicano*, 527

5  U.S. at 315. TRO and preliminary injunction proceedings do not

6  typically give the parties "the benefit . . . of a full opportunity to

7  present their cases []or . . . a final judicial decision based on the

8  actual merits of the controversy." *Camenisch*, 451 U.S. at 396.

9      Our decision in *Blumenthal* is illustrative. There, the district

10  court issued a preliminary injunction prohibiting the two plaintiffs,

11  former Merrill Lynch brokers, from soliciting the firm's clients using

12  its customer records. 910 F.2d at 1051. Following arbitration

13  proceedings before the New York Stock Exchange, the arbitrator

14  found that the plaintiffs had the right to use the customer records

15  and that the injunction should be lifted. *Id.* The district court,

16  however, denied recovery by the plaintiffs against the injunction

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1    bond. *Id.* We reversed and held that the plaintiffs were entitled to

2    recover costs and damages against the Rule 65(c) bond. *Id.* at 1056.

3    "In light of the ultimate decision on the merits by the arbitrators,"

4    we concluded, "Merrill Lynch was not entitled to the injunction it

5    received and that [the plaintiffs] had at all times the right to do

6    business with their Merrill Lynch clients." *Id.* at 1055.

7          That a trial on the merits is usually required to determine

8    whether the defendant was entitled to engage in the conduct that

9    was enjoined is true irrespective of whether the defendant seeks

10   recovery on security posted to secure a TRO or a preliminary

11   injunction. In both situations it is only upon full presentation of the

12   parties' evidence that it may typically be determined whether the

13   defendant should have been restrained or enjoined. But the need for

14   a final adjudication on the merits does not apply where, as here, a

15   plaintiff has voluntarily dismissed its suit following the order for

16   temporary relief. By voluntarily dismissing its suit, the plaintiff has,

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1 in effect, abandoned its right to "a full opportunity to present [its]

2 case[] [or] of a final judicial decision based on the actual merits of

3 the controversy." *Camenisch*, 451 U.S. at 396. Having decided that its

4 claims should not be pursued to trial, the plaintiff can hardly insist

5 that the defendant have no opportunity to establish that it was

6 wrongfully restrained.

7      This holding resolves the district court's well-founded

8 concerns over the potential abuse of TROs in this context. If a final

9 adjudication on the merits is necessary to award recovery on a TRO

10 security, "[a] plaintiff who voluntarily dismisses an action after a

11 [TRO] has been issued reaps the benefit of the [TRO] and, at the

12 same time, deprives the defendant of an opportunity to establish

13 that the [TRO] ought not to have been granted." *U.S. D.I.D. II*, 916 F.

14 Supp. 2d at 511 (quoting *Belfer v. Minko*, No. 05 CV 02473, 2008 WL

15 163615, at *2 (N.D. Ohio Jan. 17, 2008)). Apparently motivated by

16 that concern, a number of district courts—including the district

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1    court here—have concluded that a voluntary dismissal may operate

2    as a final adjudication on the merits for purposes of recovery from

3    security posted to secure a TRO.[4] However, by rejecting the premise

4    that a final adjudication on the merits is always required for

5    recovery on Rule 65(c) security, our holding resolves this problem

6    without redefining a "dismissal without prejudice" as its "opposite,"

7    an "adjudication upon the merits." *Semtek Int'l, Inc. v. Lockheed*

8    *Martin Corp.*, 531 U.S. 497, 505 (2001).

9         In sum, we reject D.I.D.'s assertion and the district court's

10   holding that recovery on Rule 65(c) security always requires a final

---

[4]  *See Belfer v. Minko*, No. 05 CV 2473, 2008 WL 163615, at *1 (N.D. Ohio Jan. 17, 2008) (plaintiffs posted bond upon granting of TRO; hearing on preliminary injunction never occurred because parties entered into settlement negotiations); *Almoss, Ltd. v. Furman*, No. 06 Civ. 8234, 2007 WL 1975571, at *1-*2 (S.D.N.Y. July 6, 2007) (after plaintiffs discontinued action, defendants sought recovery from Rule 65(c) bond for costs incurred in vacating TRO); *LaSalle Capital Grp. v. Alexander Doll Co.*, 95 C 1640, 1995 WL 584429, *1 (N.D. Ill. Oct. 2, 1995) (district court "issued and twice continued a temporary restraining order" before discharging it); *Pace v. Ross*, No. 78 Civ. 5212, 1981 U.S. Dist. LEXIS 11351, at *10 (S.D.N.Y. Mar. 13, 1981) (plaintiffs voluntarily dismissed action under Rule 41(a)(1) after district court denied plaintiffs' motion for a preliminary injunction and dissolved the TRO).

-33-

1    adjudication on the merits. Following the voluntary dismissal of a

2    plaintiff's complaint, recovery on Rule 65(c) security requires only a

3    determination that the defendant was "wrongfully restrained."

4        *B.  Whether Windstream Was Wrongfully Restrained*

5        Windstream argues that, even if the district court erred in

6    reasoning that D.I.D.'s notice of voluntary dismissal established the

7    wrongfulness of the TRO, the district court's denial of D.I.D.'s

8    motion for a preliminary injunction and dissolution of the TRO

9    establishes that Windstream was wrongfully restrained. This

10   argument has some merit. When a plaintiff files a voluntary

11   dismissal under Rule 41(a)(1), the district court's denial of the

12   plaintiff's motion for a preliminary injunction may establish that the

13   TRO should not have been granted and the defendant was

14   wrongfully restrained by a preceding TRO. *Cf. Middlewest Motor*

15   *Freight Bureau v. United States*, 433 F.2d 212, 243 (8th Cir. 1970)

16   ("Where a party fails to prove grounds sufficient for the grant of an

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1   interlocutory injunction, he at the same time shows that the

2   temporary restraining order should not have been granted, at least

3   to the extent of rendering him liable in restitution for benefits

4   received under the temporary restraining order."); *Qualcomm, Inc. v.*

5   *Motorola, Inc.*, 185 F.R.D. 285, 288 (S.D. Cal. 1999) ("When a court

6   denies a preliminary injunction after it has granted a contested TRO,

7   the restrained party has been 'wrongfully restrained,' given that a

8   TRO is only intended to last until a preliminary injunction hearing is

9   held.").

10      Yet, just as "the substantive validity of the final injunction

11  does *not* [always] establish the substantive validity of the

12  preliminary one," *Grupo Mexicano*, 527 U.S. at 315 (emphasis in

13  original), denial of a motion for a preliminary injunction and

14  dissolution of a TRO will not always establish that the defendant

15  was wrongfully restrained. For instance, a plaintiff may fail to prove

16  at the preliminary injunction stage that she will suffer irreparable

-35-

1   harm from the defendant's conduct or that the public interest

2   weighs in favor of an injunction. *See Winter v. Natural Res. Def.*

3   *Council*, 555 U.S. 7, 20 (2008). If the denial of the preliminary

4   injunction is based on some ground other than the lawfulness of the

5   defendant's conduct, then the denial of the preliminary injunction

6   may not be sufficient to show that the defendant was wrongfully

7   restrained. It may also be that although a TRO was justified for a

8   portion of the time period it was in effect, it was not justified for the

9   entire period.

10      After a district court has granted a TRO, the burden remains

11   on the plaintiff "to show that [it is] entitled to a preliminary

12   injunction." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck*

13   *Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 443 (1974). Thus,

14   where a district court dissolves a TRO without granting the

15   plaintiff's motion for a preliminary injunction, a plaintiff seeking to

16   defeat the defendant's request for recovery from the TRO security

1   bears the burden of establishing that the defendant was not

2   wrongfully restrained and is, therefore, not entitled to recover from

3   the TRO security. A plaintiff may satisfy this burden by showing

4   that the defendant did not have the legal right to engage in the

5   conduct restrained while the TRO was in effect, notwithstanding the

6   denial of the preliminary injunction. If the plaintiff fails to make this

7   showing, then the dissolution of the TRO likely establishes that the

8   defendant was wrongfully restrained, and the defendant

9   consequently enjoys "a presumption in favor of recovery against the

10  [security] for provable damages." *Nokia Corp.*, 645 F.3d at 557.

11      The effect of the thirty-day notice of termination provision in

12  the parties' contract here illustrates the complexities of this analysis.

13  When the TRO was first issued, it performed two functions. First,

14  the TRO prevented Windstream from terminating service based on

15  D.I.D.'s refusal to pay the higher rates that Windstream had

16  imposed on D.I.D. Second, the TRO prevented Windstream from

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1  cutting off service before June 3, the last day of the Service

2  Agreement's thirty-day termination notice period.

3      The district court effectively rejected the first basis for the

4  TRO when it found, at the June 21, 2012 preliminary injunction

5  hearing, that D.I.D. had failed to establish a likelihood of success on

6  the merits of the underlying contractual dispute about D.I.D.'s resale

7  of Windstream's services. That determination, however, does not

8  establish that Windstream was wrongfully restrained for the period

9  up until June 3 when the TRO arguably functioned to enforce the

10 thirty-day termination notice clause. The district court declined to

11 address D.I.D.'s contention that Windstream's May 3 notice of

12 termination violated the termination notice clause, concluding that

13 the issue had become moot because, at the time of the hearing, thirty

14 days had passed since the notice of termination.

15      The district court's finding that D.I.D. was unlikely to prevail

16 on the merits of its underlying contractual claim is irrelevant,

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1    however, to the validity of the TRO in enforcing the termination

2    notice provision. Such a provision provides a window of time

3    during which a business may locate a different service provider,

4    thereby preventing disruption in the business's operations that

5    could result in "an irreparable loss of customer goodwill." *Eastman*

6    *Kodak Co. v. Collins Ink Corp.*, 821 F. Supp. 2d 582, 587 (W.D.N.Y.

7    2011) (granting preliminary injunction to enforce contractual

8    termination notice provision). Although the district court found at

9    the June 21 hearing that any remaining risk of irreparable harm

10   derived from D.I.D.'s failure to use the time the TRO afforded to

11   locate a new telecommunications service provider, the district court

12   made clear that, when the TRO was initially issued, D.I.D. had

13   established a risk of irreparable harm if Windstream's services were

14   so abruptly cut off.

15          Although the enforcement of the thirty-day termination notice

16   provision may have been an appropriate basis for the initial issuance

-39-

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1  of the TRO, whether Windstream may recover from the TRO

2  security for unpaid charges for that period requires a different

3  analysis. A wrongfully restrained defendant may recover against a

4  TRO security "to cover the costs and damages incurred as a result of

5  complying with a wrongful [TRO]." *Nokia Corp.*, 645 F.3d at 560. The

6  Rule 65(c) security, however, "is not security for the payment of

7  damages on an ultimate judgment on the merits." *Global Naps, Inc. v.*

8  *Verizon New England, Inc.*, 489 F.3d 13, 21 (1st Cir. 2007); *see also Lever*

9  *Bros. Co. v. Int'l Chem. Workers Union, Local 217*, 554 F.2d 115, 120 (4th

10  Cir. 1976) ("[I]t is settled that the recoverable damages under such a

11  bond are those that arise from the operation of the injunction itself

12  and not from damages occasioned by the suit independently of the

13  injunction."). Consequently, if, for a portion of the time during

14  which the TRO was in effect the TRO functioned to enforce the

15  termination notice provision, then the unpaid service charges

16  incurred during that portion of time are not damages that

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1   Windstream suffered as a result of complying with a wrongful TRO.

2   Windstream cannot claim damages based on wrongful restraint

3   when it was not entitled to take the action that was restrained. The

4   unpaid charges represent a risk that Windstream accepted when it

5   agreed to the thirty-day termination notice provision. As a result,

6   even though Windstream was restrained by the TRO from

7   terminating services before June 3, the district court may conclude

8   on remand that Windstream would not be entitled to recover from

9   the TRO security for that period.

10      The distinction is significant because of the implications that

11  recovery from Rule 65(c) security has for other creditors of the

12  plaintiff. Because the security requirement enables the defendant to

13  recover costs and damages "without regard to the possible

14  insolvency of the" plaintiff, it effectively gives the defendant priority

15  over the plaintiff's other creditors. *Continuum Co. v. Incepts, Inc.*, 873

16  F.2d 801, 803 (5th Cir. 1989). Such priority makes sense where the

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1  costs and damages were incurred as a result of a wrongful TRO or

2  preliminary injunction, because the Rule 65(c) security functions as

3  "the moving party's warranty that the law will uphold the issuance

4  of the injunction." *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982)

5  (Stevens, *J.*, concurring in part and concurring in the judgment).

6  Where the damages suffered by a defendant did not result from

7  being wrongfully restrained or enjoined, however, the defendant

8  should not enjoy priority over other creditors as a result of the Rule

9  65(c) security, even if the defendant might be able to recover for the

10  damages via an independent action against the plaintiff.

11      The district court's award of recovery on the TRO security

12  included damages for Windstream during the thirty-day notice

13  period. As a result, we also remand for the purpose of revisiting that

14  portion of the award.

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1 **IV.    Calculating Recovery on the Rule 65(c) Security**

2        For its final argument, D.I.D. contends that it was improper

3 for the district court to calculate damages on the TRO security based

4 on the "invoiced rates and charges." D.I.D. asserts that Windstream

5 should not be permitted to recover "a windfall profit" for services

6 that Windstream would not have provided in the absence of the

7 TRO. Under D.I.D.'s approach, the district court would base its

8 damages calculation not on the amount that Windstream charged,

9 but rather on the actual cost to Windstream of providing such

10 services. We review an award of damages on Rule 65(c) security for

11 abuse of discretion, which encompasses *de novo* review for legal

12 issues and clear error review for factual findings. *See Nokia Corp.*, 645

13 F.3d at 557; *Legros*, 529 F.3d at 474.

14        Rule 65(c) does not define the "damages" that are recoverable

15 from Rule 65(c) security. A number of courts and commentators,

16 however, have indicated that restitution can provide an appropriate

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1   measure of damages. *See Middlewest*, 433 F.2d at 244 ("Restitution is

2   the proper remedy to return the parties to the position they would

3   have been in had the [defendant] . . . not been judicially

4   restrained."); *Littell v. Morton*, 369 F. Supp. 411, 419 (D. Md. 1974)

5   ("[U]nder the principle of 'restitution' a party who obtains benefits

6   from an improperly issued injunction, that he would not have

7   received but for the injunction, has a duty to restore that benefit to

8   those who have been injured by the injunction."), *aff'd*, 519 F.2d 1399

9   (4th Cir. 1975); *see also* 11A Wright & Miller § 2973 (noting, in the

10  context of Rule 65.1 bonds, that "the bond covers incidental and

11  consequential costs and either the losses the unjustly restrained

12  party has suffered while wrongfully being prohibited from engaging

13  in certain activities *or the complainant's unjust enrichment* while his

14  adversary was improperly enjoined" (emphasis added)). An award

15  of restitution, a traditionally equitable form of relief, *see Mertens v.*

16  *Hewett Assocs.*, 508 U.S. 248, 256 (1993), accords with Rule 65(c)'s

1    "origin in early equity practice," *Nokia Corp.*, 645 F.3d at 557

2    (quoting *Commerce Tankers Corp. v. Nat'l Mar. Union of Am.*, 553 F.2d

3    793, 800 (2d Cir. 1977)).

4        We agree that where a defendant is wrongfully restrained by

5    being compelled to provide services that it was not legally required

6    to provide, the district court may employ a restitutionary measure to

7    calculate damages recoverable against the Rule 65(c) security. "The

8    restitutionary goal is to prevent unjust enrichment of [one party] by

9    making him give up what he wrongfully obtained from [another

10   party]." 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 1.1 (2d ed. 1993).

11   Accordingly, a restitutionary approach bases damages on the

12   "objective or market value" of the *benefit* unjustly acquired by the

13   plaintiff under the wrongful TRO, rather than the value of the *loss*

14   sustained by the defendant. *Id.* § 4.1(1). Several considerations lead

15   us to conclude that a restitutionary approach to damages calculation

16   will normally be appropriate where a plaintiff acquires a wrongful

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1    TRO that compels the defendant to provide the plaintiff with

2    services.

3         First, a restitutionary approach to damages calculation

4    prevents an inequitable benefit transfer to a party that acquires the

5    wrongful TRO. The market value of services typically exceeds the

6    cost of providing them, because the market value includes the

7    provider's profit margin. Hence, if a defendant that is compelled to

8    provide services under a TRO could recover only the costs that it

9    incurred, the plaintiff would receive a discount not enjoyed by the

10   defendant's other customers. A restitutionary award, therefore,

11   prevents a plaintiff from being able to use a wrongful TRO to

12   compel a defendant to provide the plaintiff with terms and prices

13   not available to other customers. *Cf. Kansas ex rel. Stephan v. Adams*,

14   705 F.2d 1267, 1269 (10th Cir. 1983) (observing that the "extent" of

15   damages awarded from Rule 65(c) security "is in the discretion of

U.S. D.I.D. CORP. v. WINDSTREAM COMMUNICATIONS, INC.

1   the district court and is based upon considerations of equity and

2   justice").

3        Second, a restitutionary approach in these circumstances will

4   normally be more administrable than an approach based on the

5   costs to the defendant. The market value of services can usually be

6   readily determined. By contrast, to determine the cost that a

7   defendant incurs in providing services, a district court may have to

8   resolve difficult factual questions, likely necessitating extensive

9   discovery. We think it unwise to require such a burdensome inquiry

10  to resolve the collateral issue of recovery from a TRO security.

11       Finally, a restitutionary approach to damages calculations

12  accords with the function of Rule 65(c) security. Rule 65(c) security

13  can "be viewed as a contract in which the court and plaintiff 'agree'

14  to the [security] amount as the 'price' of a wrongful injunction."

15  *Continuum Co.*, 873 F.2d at 803 (citation omitted). In accordance with

16  this function, courts have repeatedly held that, in the absence of bad

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1  faith on the plaintiff's part, "the [security] provides the plaintiff with

2  notice of the maximum extent of its potential liability." *Nokia Corp.*,

3  645 F.3d at 557; *see also Blumenthal*, 910 F.2d at 1054; *Continuum Co.*,

4  873 F.2d at 803; *Coyne-Delany Co. v. Capital Dev. Bd. of the State of Ill.*,

5  717 F.2d 385, 393 (7th Cir. 1983); *Int'l Ladies' Garment Workers' Union*

6  *v. Donnelly Garment Co.*, 147 F.2d 246, 253 (8th Cir. 1945). Similarly,

7  because the market value of a given service is typically publicly

8  known, a restitutionary approach to a damages calculation will

9  usually allow the plaintiff to predict its potential liability and make

10 an informed "business judgment that it [i]s willing to incur the 'cost'

11 of a possibly wrongful" TRO. *Global Naps, Inc.*, 489 F.3d at 21. Here,

12 for instance, D.I.D. could readily ascertain the market value of the

13 services it was obtaining from Windstream, and so could easily

14 predict its liability if the TRO was found to be wrongful.

15      We believe that the district court's approach in this case, in

16 basing its damages calculation on the rates that Windstream charged

U.S. D.I.D. Corp. v. Windstream Communications, Inc.

1 for services rather than the cost of providing services, is consistent

2 with a restitutionary approach to damages calculation. We identify,

3 however, two issues that we believe must be addressed on remand

4 should the district court determine that Windstream was wrongfully

5 restrained.

6 First, the district court allowed Windstream to recover

7 damages for the period from June 1, 2012 to June 21, 2012 based on

8 the "wholesale" rates. Although Windstream described the

9 "wholesale" rates as "standard," J.A. 86, the district court did not

10 determine that these rates reflected the market value of

11 Windstream's services.[5] And although the plaintiff bears the burden

12 of showing that a subsequently dissolved TRO was not wrongfully

13 issued, the burden of "demonstrat[ing] that the damages sought

---

[5] The district court required Windstream to file a supplemental declaration providing support for its claim for damages on the security. However, that declaration did not demonstrate that the indicated rates reflected their market value.

-49-

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1   were proximately caused by the wrongful injunction" lies on the

2   defendant seeking to recover on the security. *Nokia Corp.*, 645 F.3d at

3   559. On remand, therefore, to recover damages from the TRO

4   security based on the wholesale rates, Windstream must establish

5   that the wholesale rates represent the market value of the services

6   Windstream was wrongfully compelled to provide to D.I.D. while it

7   was wrongfully restrained.[6]

8       Second, the district court must determine the amount of

9   damages that may be recovered from the TRO security. In particular,

10   the district court must determine whether the provision of services

11   by Windstream during the thirty-day termination notice period may

12   result in damages recoverable from the TRO security.

---

[6] The district court awarded damages for services provided from May 21 to June 1 based on the "interim" rates that Windstream imposed via its March 27 letter. If the district court concludes that, notwithstanding the thirty-day termination notice period provided for in the Agreement, recovery from the TRO bond is appropriate beginning May 21, it will also need to evaluate the appropriate rates for May 21 to June 1.

U.S. D.I.D. CORP. V. WINDSTREAM COMMUNICATIONS, INC.

1                                    **CONCLUSION**

2          For the foregoing reasons, we VACATE the order of the

3   district court. We REMAND the case to the district court to: 1)

4   determine whether and for which portions of the time when the

5   TRO was in effect Windstream was wrongfully restrained; 2)

6   determine what rates are justified as a measure of restitutionary

7   damages; and 3) recalculate the damages recoverable from the TRO

8   security.